# ANNIE D. WAY

*v.*

# ALONZO WAY.

1. DIVORCE—*jurisdiction dependent upon residence in the State.* All suits for divorce must be commenced in the county where the complainant resides; and he must have resided in the State for one year previous to the filing of the bill, unless the offense was committed within the State, or whilst one or both the parties resided therein.

2. Residence of the complainant in this State is essential to the jurisdiction of the court in all suits for ·divorce. If the offense was committed without the State, and neither party resided here, a residence of one year is required. If the offense was committed within the State, and neither party was a resident at the time; or if committed without the State, and one or both parties resided here, then actual residence must still exist, to confer the right to sue, but not a residence for one year.

3. SAME—*residence defined.* Although the word, "residence," is not the same in meaning with the word, "domicile"—a residence being more transient in its nature—yet, within the meaning of the divorce act, there must be some intent of permanent business or stay. It can not be acquired by going to a place with the purpose of returning immediately, or by a visit to this State to bring a suit, while the party's domicile and business is in another State.

4. SAME—*want of jurisdiction—how taken advantage of.* Where the facts necessary to give the court jurisdiction are stated in a bill for divorce, which are denied by answer, the question of jurisdiction becomes one of fact, to be determined on the hearing, and is not waived; and when, during the progress of the trial, the want of jurisdiction clearly appears, it is the duty of the court to dismiss the bill.

5. CONSTRUCTION OF STATUTES—*rule of.* The intention of a statute must be sought in the words, and courts have no right to suppose that the legislature intend anything different from their natural import. Where a statute needs construction, every part of it must be considered, so that the whole may harmonize, it never being presumed that any portion was intended to be without a meaning.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. HOWE & RUSSELL, for the appellant.

Mr. JOSEPH PFIRSHING and Mr. V. T. KENNY, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The solution of one ·question against the complainant disposes effectually of this case, and, therefore, we shall not enter upon a discussion of the numerous errors assigned.

The bill commences as follows: " Your orator, of the city of Chicago, Cook county, Illinois," and subsequently alleges that the complainant is an actual resident of this State. We shall not question these allegations to be a substantial compliance with the requirement of the statute, that proceedings for a divorce shall be had in the county where the complainant resides.

The bill further charges that the defendant committed adultery with one Richmond, in the city of Chicago, county of Cook, and State of Illinois.

The answer expressly denies the charge of adultery, and that the complainant resided in this State, either at the time of filing the bill or at the time of the alleged offense; and avers that the defendant was not a resident of this State at the time the offense of adultery is alleged to have been committed.

Thus it will be seen that a direct issue was presented as to the residence of complainant in this State at the time of filing the bill.

The only evidence as to the fact of residence, on the part of complainant, was his own, and we quote his language from the the record:   " That he resided in Haverhill, State of Massachusetts, and had resided there for the past year; that he was carrying on the business of a merchant tailor; that he came to Chicago three or four days prior to the commencement of this suit."

He says, in another portion of his testimony, that he had resided in Iowa, and having heard of the adultery of his wife in Chicago, he shipped her goods to Haverhill and his own to Chicago, and concluded that he would not live with her longer; "that one of his objects was to get a divorce; that he intended, if a favorable opportunity occurred, to remain there and engage in business—namely, in Chicago; and that no such opportunity occurred, and in about three months after, he returned to Haverhill and went into business there."

The proof is conclusive that, at the time of the commencement of the suit, and during its progress, both parties were actual residents of the State of Massachusetts.

The direct question is, therefore, presented: Upon the hearing, had the court jurisdiction to render the decree, and dissolve the contract of marriage?

It is contended that the objection to the jurisdiction should have been taken before the trial on the merits. This could not have been done, for the bill alleged all the facts necessary to confer jurisdiction. The question of jurisdiction, then, became one of fact, to be determined upon the hearing. It might, perhaps, have been presented by motion after the evidence was heard; but it was raised by an instruction asked and refused. When the want of jurisdiction clearly appeared during the progress of the trial, it was the right and duty of the court, under the pleadings, to have dismissed the bill.

The case of *Peeples* v. *Peeples,* 19 Ill. 269, is not in point. In that case, the want of jurisdiction was apparent on the face of the bill. It disclosed that the complainant resided in one county and filed her bill in another. The defendant filed his answer, and made no objection. until after trial and verdict, and thereby waived the objection.

In this case, the court had jurisdiction, if the bill was true. Its truth was denied, and when the complainant failed to sustain his allegations by proof, the question of the jurisdiction of the court, for the first time, arose.

The court was asked, in behalf of the defendant, to instruct the jury that if the complainant, at the time of filing the bill, did not have an actual residence in Cook county, he was not entitled to a verdict. This was refused, and the jury were instructed that residence in the county or State is not necessary, if the act of adultery was committed in the county in which the suit was brought. If, by a proper construction of our statute, the court had not jurisdiction, then even consent of the parties would not give it.

There was sufficient evidence to justify the inference that the defendant had been guilty of adultery in the county of Cook.

Did proof of this fact, without proof of residence in the county, confer jurisdiction? The provisions of the statute, which must control the answer to this question, are the following:

"Sec. 2. The proceeding shall be had in the county where the complainant resides, and the process may be directed to any county in the State.

"Sec. 3. No person shall be entitled to a divorce, in pursuance of the provisions of this chapter, who has not resided in the State one whole year previous to filing his or her petition, unless the offense or injury complained of was committed within this State, or whilst one or both of the parties resided in this State." Rev. Stat. 1845, 197.

Counsel for appellee contend that section 2 merely establishes a rule of practice, and not a condition precedent to jurisdiction, and that even the citizen of the State is required to institute his suit for a divorce in the county where he resides; but when the act is committed here, jurisdiction is given without any residence, and section 2 only requires that the complaining party shall file his bill in the county where he resides. If no residence is required in the given case, it is difficult to comprehend how the requirement that the bill

shall be filed in the county in which the. complainant resides, can be complied with, and when in fact no residence has been obtained.

No reason has been assigned why this provision is a mere rule of practice, and a compliance with it not essential to jurisdiction; and, we apprehend, none can be given. The language is comprehensive enough to embrace all suits for divorce, whether for offenses committed without or within the State. The construction contended for would fritter away one section of the statute as to non-residents, and make it operative as to residents. The legislature certainly never intended the distinction, that the resident must sue in the county of his residence, and the non-resident might sue in any county in the State.

We have analogous statutes, establishing rules of practice, a compliance with which is necessary to jurisdiction. The chancery act requires suits in equity to be commenced in the circuit court of the county in which the defendants, or the major part of them, reside. So, according to the statutes in relation to dower and partition, the bills must be filed in the counties where the lands, or the major part of them, lie. Without a conformance with these requirements, the court would not have jurisdiction.

In the ascertainment of the meaning of a statute, it is well to keep in view the rules of interpretation which should control. The intention must be sought in the words; and courts have no right to suppose that the legislature intended anything different from their natural import. When a statute needs construction, every part of it must be considered, so that the whole may harmonize; for it is never to be presumed that the legislature intended any portion to be without meaning.

What, then, was the intention in the enactment of the last clause of section 2? The words are simple and expressive, and the meaning would seem to be obvious. The bill shall be filed in the county in which the complainant resides. The

language is imperative, and excludes the right to commence proceedings in any other county than the one in which the residence of the complainant is fixed. Residence is made a prerequisite to the existence of the right to file the bill. The character of the residence we shall notice in the sequel.

The subsequent section did not change or remove the condition imposed in the second. It rather strengthens the view we have taken, by fixing definitely the term of residence, and then makes two exceptions, not to the fact or requirement, but to the term of residence.

If the intention had been to dispense with residence entirely, in the excepted case, it might easily have been done, by adding, after the words in the second section, "the proceedings shall be commenced in the county where the complainant resides," the words, "unless the offense or injury was committed within this State." The second section is distinct, positive and absolute, as to the county in which the suit shall be commenced, and as to the fact of residence of the complaining party. It must control, independent of the subsequent section. The third section still requires a residence, and of one year under some circumstances.

The correct reading of the two sections is as follows: All suits for divorce must be commenced in the county where the complainant resides; and he must have resided in the State for one year previous to filing the bill, unless the offense was committed within the State, or whilst one or both of the parties resided therein.

Residence of the party injured is essential to jurisdiction. If the offense was committed without the State, and neither party resided here, a residence of one year is required. If the offense was committed within the State, and neither party was a resident at the time; or if committed without the State, and one or both parties resided here, then actual residence must still exist, to confer the right to sue, but not a residence for one year.

It only remains to inquire as to the meaning of the word, "reside," as used in the statute.

It can not be supposed that the legislature intended to give a *status* in the courts, and the right to apply for a divorce to citizens of other States, when they had no dwelling place and no permanent business amongst us. With such privileges, our courts would be cumbered with causes for divorce, based upon the offenses of every truant husband or wayward wife, who, during a brief sojourn in the State or a rapid transit through it, violated the marital vow.

Something more must have been intended than that the complainant should merely have an existence in the county where the suit is commenced.

In *Williamson* v. *Parisien,* 1 Johns. Ch. 388, a bill for divorce was filed. The statute of New York, construed in the opinion, was that the injured party, in suits for divorce, must be "an actual resident in the State at the time of the adultery and at the time of the exhibiting of the bill."

Chancellor KENT said the party must take up his residence in the State, with a *bona fide* intent, with the *animus manendi,* before he can bring himself within the policy or the language of the statute.

The view of the learned Chancellor may have been induced somewhat by the prefix, "actual," before "resident;" but still the statute only required a residence, and not a domicile, and it was held that the residence must have been taken up with a permanent intent. While a man can have but one domicile, he may have several residences; and though the residence is more transient in its nature, there must be some intent of permanent business. It can not be acquired by going to a place with the purpose of retiring immediately. When the domicile and entire business are within another jurisdiction, residence can not be obtained by a visit to this State merely for the institution of the suit, without any other intention.

The meaning of the words, "residing in this State," was passed upon by this court in *Board of Supervisors* v. *Davenport*, 40 Ill. 197. The question was as to the amenability of a person to the taxing power of the State. The court say that, though a man may have a domicile in another State, he may have also a residence in this State; but that a resident is one who dwells in a place for some continuance of time, for business or other purposes; that a transient visit to a place will not make a person a resident, but that he must have a regular and permanent business there.

In the matter of *Wrigley*, 8 Wendell, 134, the Chancellor said: "'Inhabitancy' and 'residence' do not mean precisely the same thing as 'domicile,' when the latter term is applied to successions to personal estate, but they mean a fixed and permanent abode or dwelling place for the time being, as contra-distinguished from a more temporary locality of existence."

In *Frost* v. *Brisbin*, 19 Wend. 11, the words, "shall not have been a resident of this State for at least one month previous to the commencement of a suit against him," were construed. The court held that the transient visit of a person for a time at a place, did not make him a resident while there; that something more was necessary to entitle him to that character. "There must be a settled, fixed abode; an intention to remain permanently, at least, for a time, for business or other purposes, to constitute residence, within the legal meaning of that term."

In the matter of *Fitzgerald*, 2 Caines' R. 317, an application was made to supersede an attachment issued against the property of an absconding debtor. The law required that he prove himself "*a resident within the State.*" The debtor was in the State on a commercial adventure, and the court held that the words did not mean a residence of a temporary nature, but one permanent and fixed.

In this case, the complainant was here for the temporary purpose of his suit, when his domicile and business were in Massachusetts.

A wise policy requires us to hold that he came into this jurisdiction merely to procure a divorce, without any *bona fide* intention of residence or regular business here, and with the intention of immediate return to his domicile and business in another State, and that the court acquired no jurisdiction of the relation between the parties.

Though a suit for a divorce, upon its face, is a mere controversy between the parties to the record, yet the public occupies the position of a third party. Society has an interest in every marriage, and it is the duty of the State, in the conservation of the public morals, to guard the relation, and to see that the status of all applicants for its dissolution should be established.

The decree is reversed and the bill dismissed.

*Decree reversed.*